IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cr. No. 19-141 JCH |
| | ) | |
| vs. | ) | |
| | ) | |
| **ALLEN LEWIS**, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR UPWARD DEPARTURE AND/OR UPWARD VARIANCE

The United States respectfully submits its Motion for Upward Departure and/or Variance and Sentencing Memorandum in response to Defendant's Sentencing Memorandum and in preparation for Defendant Allen Lewis' sentencing hearing. The United States expects members of the family to address the Court at sentencing, but does not currently anticipate presenting other evidence. The United States is requesting upward departures and/or upward variances to a final sentence of 180 months of incarceration, followed by 5 years of supervised release. As basis for the upward departure and variance, the United States provides as follows:

## PROCEDURAL BACKGROUND

Defendant was arrested on a criminal complaint for one count of Involuntary Manslaughter, pursuant to 18 U.S.C. §§ 1153 and 1112, on April 19, 2018. (Doc. 1). Defendant filed four waivers extending the time to present the case to the Grand Jury. (Docs. 17, 19, 21, and 26). On January 16, 2019, a grand jury indicted Defendant on three counts of Involuntary Manslaughter, pursuant to 18 U.S.C. §§ 1153 and 1112, one count of Assault of a Minor Resulting in Serious Bodily Injury, pursuant to 18 U.S.C. §§ 1153, 113(a)(6) and 3559(f)(3), and one count of Assault Resulting in Serious Bodily Injury, pursuant to 18 U.S.C. §§ 1153 and

113(a)(6). (Doc. 36). On August 6, 2019, Defendant pleaded guilty to an information charging

the same counts in the Indictment. (Doc. 51). The correct spelling of Defendant's name is

included on the Information. (Doc. 48). The Pre-Sentence Investigation Report (PSR) was

submitted in this case on September 27, 2019. (Doc. 53). The parties did not file any formal

objections to the PSR.

The United States concurs with the initial analysis in the PSR. (Doc. 53). The Defendant

should be categorized as a Criminal History Category I. (Doc. 53 ¶ 93). The Base Offense Level

for Involuntary Manslaughter is 22. (Doc. 53 ¶¶ 57, 63, and 69). The Base Offense Level for

Assault Resulting in Serious Bodily Injury is 21. (Doc. 53 ¶¶ 75 and 81). After the Multiple

Count Adjustment and Acceptance of Responsibility Defendant's total offense level is 23.

Defendant's guideline range for an offense level of 23 and Criminal History Category I is 46-57

months. (Doc. 53 ¶ 130). As noted in the PSR, Defendant faces a sentencing enhancement

pursuant to 18 U.S.C. § 3559(f)(3) of a minimum period of incarceration of 120 months up to

life. (Doc. 53 ¶¶ 129 and 130). Defendant filed his sentencing memorandum on May 18, 2020.

(Doc. 66). The United States requested an extension of time to file a response until May 29,

2020. (Doc. 68) The Court granted the extension of time. (Doc. 69).

## FACTUAL BACKGROUND

On April 16, 2018, Defendant drove while intoxicated with an alcohol level in blood

serum of .147, while on the wrong side of the road, and crashed into the victims' vehicle. Three

people, one adult and two children, died in the crash. The Defendant, an adult victim, and a child

were flown to UNMH with serious injuries requiring hospitalization.

The call reporting the crash came in at approximately 9:15 pm. A witness arrived on the

scene, shortly after the crash. She spoke with Defendant and asked another vehicle to drive to the

top of a hill and call 911 since there was poor service at that location. The witness stated Defendant smelled of alcohol and was out of his vehicle when they spoke.

The New Mexico State Police (NMSP) crash reconstruction shows Defendant driving on the wrong side of the road and his impact speed was approximately 66 mph, 11 mph over the speed limit. The driver of the victims' vehicle, MS, applied the brakes and her vehicle decelerated from approximately 77 mph to 44 mph at the time of the crash. MS swerved into the opposite lane in attempt to avoid Defendant. The crash data recorder on Defendant's vehicle apparently had been damaged, probably in the crash, and NMSP did not recover any data from it. All the data was recovered from the victims' crash data recorder and the data collected by NMSP for the reconstruction.  The crash occurred on Route 9 between Pueblo Pintado, NM and Tinian, NM, on the Navajo Reservation. Defendant had crossed so far over into the other oncoming lane of traffic, he hit the passenger side of the victims' vehicle, and was between the victims' car, which was in the middle of the road, and the guardrail.

MS, victim in Count 5, suffered serious injuries including two sacral fractures, hip fractures, an orbital bone fracture, two rib fractures, and a metacarpal base fracture. She was hospitalized for several weeks, followed by recovery time at a rehab facility. She had surgery to repair the hip fractures. MS continues to have issues related to her vision out of the eye with the orbital wall fracture. She needed the aid of a wheel chair, walker, and hip brace for months after the crash. MS still has physical pain related to the injuries, especially in cold weather, and can feel the pins poking her spinal column when laying down in certain positions.

MS's fiancé, JB, victim in Count 3, was the front seat passenger and the adult killed in the crash. JB died from multiple blunt force injuries. The injuries include skull fractures with brain bleeding and swelling, spinal tear, rib fractures and internal injuries.

MS's eldest daughter, victim in Count 1, sat in the right rear passenger seat and died from her injuries at the crash site.  She was fifteen years old at the time of the crash. Her cause of death was multiple blunt force injuries from the crash, including severe spinal injury, rib fractures that lacerated the chest wall, and internal bleeding.

MS's eldest son, the ten year old victim at the time of the crash in Count 2, sat in the rear middle passenger seat and died from multiple blunt force injuries. The injuries included a skull fracture, a spinal fracture, and severe internal injuries.

MS's youngest daughter, four years old at the time of the crash, and victim in Count 4, was flown to UNMH with serious injuries. She had a two minute long seizure that EMS observed. She had a hip fracture, left arm fractures to her ulna and displaced radius fracture requiring pinning in addition to a cast, partial lung collapse, and was hospitalized for about five days. She needed a cast, physical therapy and required a hip brace for a period of time after the crash. She still cries missing her sister, brother, and JB, who she called her father.

Defendant claims he drank socially, fell asleep at the wheel, and veered into the wrong side of the road. Defendant received a liver laceration, adrenal gland injury, and possible sacral fracture. Defendant had been previously diagnosed with hyperacusis and tinnitus, causing sensitivity to sound and ringing in his ears, and has a history of depression and anxiety. His alcohol blood serum level was 147 mg/dL at UNMH at 12:47 am on April 17, 2018, which was over three hours after the crash. Law enforcement obtained a receipt and video footage from the Giant gas station. They show Defendant purchased three different alcoholic beverages at 4:31 pm the day of the crash.

**<u>DISCUSSION</u>**

Pursuant to United States Sentencing Guidelines (USSG), an upward departure or variance is warranted based on USSG § 5K2.1, Death, USSG § 5K2.2, Physical Injury and USSG § 5K2.3, Extreme Psychological Injury. Moreover, an analysis of the 18 U.S.C. § 3553(a) factors indicate that a variance above the post-departure advisory guideline range is also warranted. An upward variance is needed to address the inherent inequities between the harm caused in involuntary manslaughter of a child, as compared to an assault of a minor resulting in serious bodily injury. As discussed herein, the United States is requesting the Court depart and/or vary upwards to a sentence of 180 months of incarceration to be followed by a term of supervised release.

**1. An Upward Departure is Warranted under USSG § 5K2.1, Death**

The United States Sentencing Guideline § 5K2.1 provides, "If death resulted, the court may increase the sentence above the authorized guideline range." It continues, "Other appropriate factors are whether multiple deaths resulted, and the means by which life was taken. The extent of the increase should depend on the dangerousness of the Defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the other Chapter Two guidelines, already reflects the risk of personal injury." The PSR identified this as grounds for an upward departure or variance. (Doc. 53 ¶ 147).

Involuntary manslaughter cases resulting in multiple deaths presents a difficult harm quantification scenario. While the Sentencing Guidelines' ordinary grouping rules apply in this case, they do not adequately address the increased harm.  Increasing the offense level in this case one level for each additional death caused by Defendant inadequately addresses the harm caused by Defendant. The inadequacy is further highlighted by the fact that had another child died, the

minor victim in Count 4, instead of being seriously injured, Defendant's penalty would have been halved, as the sentencing enhancement in 18 U.S.C. 3559(f)(3) would not apply to an additional charge of involuntary manslaughter. It is a cruelly unjust guideline that would have rewarded a Defendant with a lower guideline range for causing an additional death of a child, rather than seriously injuring a child.

The inadequacy of the guidelines as it pertains to multiple deaths has been noted by the Tenth Circuit. "[T]he history of the involuntary manslaughter Guidelines indicates that the Commission, its working groups, and others have repeatedly expressed concern that the sentencing ranges for involuntary manslaughter generally, and for multiple fatality cases in particular, are too low." *U.S. v. Lente*, 759 F.3d 1149, 1159 (10th Cir. 2014). It is somewhat of a rarity to have multiple fatalities that do not include the offender, and therefore calculating the harm caused can be difficult. In *Lente*, a six-month increase under the grouping rules was deemed insufficient by the district court when multiple deaths resulted. *Id.* at 1163. Here the increase, absent the enhancement under 18 U.S.C. § 3559(f)(3), would have been only a 9 to 11 month increase for two additional deaths. Other jurisdictions have also concluded multiple death cases are ineffectively dealt with by the Sentencing Guidelines. *Lente* at 1164.

The death of an additional family member compounds the harm to the family. For MS, it is not just incrementally worse. MS lost a son, a daughter, and her new fiancé. The harm to the extended family of MS was not marginally increased by the loss of a brother and a sister, or a niece and a nephew, or two grandchildren as compared to merely one, it was exponentially worse.  One death by itself would have been difficult, but this family lost three individuals and the standard grouping calculation fails to fairly account for the increased harm caused by Defendant.

**2. An Upward Departure based on Extreme Psychological Injury is Warranted**

The United States Sentencing Guideline § 5K2.3 provides, "If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range." Some factors to consider are, "substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim." *Id.* These conditions are present in this case. The PSR acknowledges the presence of these conditions may warrant a departure or variance. (Doc. 53 ¶ 150). It is never easy to lose a loved one, but MS lost three that day. She herself suffered serious injuries that still cause her physical pain, on top of the emotional pain of having lost her fiancé and two of her children. She also could not be with her daughter when she was hospitalized, as her condition was so severe that she had to be hospitalized in another room and recovering from surgery. She depended on other family members to not leave her daughter alone and provide her with updates.

MS stated that the she is suffering from a life sentence, as she will miss seeing her children killed in the car crash graduate high school, go to college, get married, and other life events. (Doc. 53 ¶ 38). These events were stolen away from them. She stated some family members view her as a burden now, and wish she had died too.

MS is not the only one experiencing such difficulty. The victim in Count 4 and her brother still suffer. They have trouble sleeping and cry out for the lost loved ones. Both of MS's surviving children go to counseling to help deal with their loss. A recording of a victim statement, victim in Count 4 and her brother who was not in the vehicle at the time of the crash, will be sent to the Court and Defendant under separate cover. In the video you can see the effects this has had on them two years later. The victim in Count 4 describes that she tells her deceased

siblings that she wished they came back. The brother mentions visiting his mother, MS, at the hospital and being afraid she too was going to die, and being left alone. He goes on to share that without his brother and sister he is like a puddle.

The PSR identifies that there is additional harm to the family of JB. MB, JB's mother, describes how her family must deal with the loss of a loved one and that it will affect them for the rest of their lives. They could not have a funeral for JB because they were still in so much shock at his passing. MB describes how every day is a challenge and she used to cry every day. (Doc. 53 ¶ 45). MB describes the loss of JB as being aggravated by the extra distance between her and her granddaughter, JB's child. The death of their loved ones caused a severe psychological toll on the families of the victims.

**3. An Upward Departure or Variance based on Physical Injury**

Defendant caused significant physical injuries in this case to the surviving victims. Pursuant to USSG §5K2.2, Physical Injury, Defendant should receive an upward variance or departure. "If significant physical injury resulted, the court may increase the sentence above the authorized guideline range." USSG §5K2.2. The PSR acknowledges the presence of these conditions may warrant a departure or variance. (Doc. 53 ¶¶ 148-49). The victims are not culpable for causing the injury as there was no intentional or knowing risk involved, other than driving on a rural road. The family was going to a family member's home. Defendant drove under the influence, possibly fell asleep, and on the wrong side of the road, striking the victims' vehicle. Defendant caused severe injuries.

Defendant caused the two surviving victims to spend approximately 28 days in the hospital combined. MS had surgery and stayed at the hospital for over three weeks, and then needed additional care at a rehabilitative facility. MS still suffers pain and can feel the pins in her

body. MS suffered multiple fractures to her hips, hand, lower back, orbital wall and ribs. At times, the injuries to her eye force MS to lay down and try to sleep to restart her day to improve her vision. The injuries have prevented her from returning to work. She required the aid of a wheelchair and walker for an extended period of time after the crash.

The minor victim in Count 4 suffered severe injuries as well, including multiple fractures to her left forearm, hip, and intubation due to a partially collapsed lung. She seized while the emergency personnel cared for her. The minor victim in Count 4 required hospitalization for about five days, and was forced to wear a hip brace. She was spared additional surgical intervention due to her age and the physicians hoped her body could heal without the additional interventions to her hips. The injuries required her to need a walker and wheelchair to get around after the crash.

**4. An Upward Variance is Needed to Address Sentencing Inadequacies**

When considering the 18 U.S.C. § 3553(a) factors, the nature and circumstances of this offense, history, and characteristics of the Defendant, as well as the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, all warrant an upward variance in this case. The Sentencing Guidelines do not adequately reflect the nature and circumstances of the offense for the harm caused for an individual who kills three people, including two minors, and seriously injures to two more, including one minor. The harm caused by multiple deaths has been noted in the PSR and above, and should be considered as an additional justification for an upward variance. However, in addition to the inadequacies of multiple deaths, in fails to address the harm caused by taking the life of a minor. Crimes committed while driving drunk create a bit of a sentencing discrepancy

when it comes to the harm caused with Involuntary Manslaughter and Assault Resulting in Serious Bodily Injury, especially when you factor in the enhancement of 18 U.S.C. § 3559(f)(3).

This statute, 18 U.S.C. § 3559(f)(3), became effective as part of the Adam Walsh Act on July 27, 2006, to increase punishment for those committing crimes of violence against minors. *See generally United States v. Sanders*, 708 F.3d 976, 993-94 (7th Cir. 2013). Assault resulting in serious bodily injury is a crime of violence. *See generally United States v. Mann*, 899 F.3d 898, 908 (10th Cir. 2018)("We . . . conclude that § 113(a)(6) is categorically a crime of violence under 18 U.S.C. § 924(c)(3)(A).") "[A] defendant convicted of § 113(a)(6) has necessarily committed a 'purposeful act' . . . The underlying action does not matter. What matters instead is whether the act was done with (at least) conscious disregard of a substantial risk that the behavior will cause harm to another." *Id.* at 906. So the enhancement applies for 18 U.S.C. § 3559(f)(3). However, the same conduct killed two minors, one under the age of 14, and the enhancements under 18 U.S.C. § 3559(d) or 18 U.S.C. § 3559(f)(1) do not apply.

While Defendant may argue it is merely for a reckless act, that has never stopped the punishment for unintended consequences, including for harm deemed egregious, like harm to minors. For example in *Dean* the Supreme Court discusses why unintended consequences of unlawful acts may garner increased punishment. *Dean v. United States*, 556 U.S. 568, 575 (2009) "It is unusual to impose criminal punishment for the consequences of purely accidental conduct. But it is not unusual to punish individuals for the unintended consequences of their *unlawful* acts." *Id. Dean* continues

> If any accidental mischief happens to follow from the performance of a *lawful* act, the party stands excused from all guilt: but if a man be doing anything *unlawful*, and a consequence ensues which he did not foresee or intend, as the death of a man or the like, his want of foresight shall be no excuse; for, being guilty of one offence, in doing antecedently what is in itself unlawful, he is criminally guilty of whatever consequence may follow the first misbehavior.

*Id.* at 575-76 (*citing* 4 W. Blackstone, Commentaries on the Laws of England 26-27 (1769)). The conduct here was clearly criminal, Defendant's driving under the influence, and the harm caused by Defendant for killing two children should not be half the penalty of seriously harming one child. This creates an absurdity in the law where killing more kids is better than seriously harming them. The family still mourns the loss of all three people killed by Defendant.

The Adam Walsh Act sought to increase the penalties for serious crimes committed against minors. In the context of a crash involving drunk driving, this created irrational outcomes, making it appear that the loss of life of a child, or in this case two, means less than seriously injuring one child, and this does not even take into account the additional harm of killing another adult victim. This is not true to the families in this matter, the loss of the three lives should not be treated so insignificantly by Congress and the Sentencing Guidelines. In order to promote respect for the law and provide just punishment for all of the offenses and harm caused by Defendant, the Court should grant the motion for upward departures and variances and sentence Defendant to 180 months of incarceration.

## <u>CONCLUSION</u>

The Defendant's actions caused irreparable harm to the families by killing three people and seriously injuring two more. The loss of multiple family members is not an incremental increase of pain or loss, the pain and mourning is compounded. The psychological pain and loss to the families is multiplied by the loss of the person they called Dad and the loss of their siblings. Defendant was extremely reckless driving at about twice the legal limit, falling asleep, and driving on the wrong side of the road. The Sentencing Guidelines do not adequately address the harm caused in involuntary manslaughter cases, especially multiple death cases. Therefore,

the United States recommends an upward departure and/or variance for a sentence of 180 months

of incarceration to be followed by 5 years of supervised release.

                                        Respectfully submitted,
                                        JOHN C. ANDERSON
                                        United States Attorney


                                        _____
                                        NICHOLAS J. MARSHALL
                                        Assistant United States Attorney
                                        Post Office Box 607
                                        Albuquerque, New Mexico  87102
                                        (505) 346-7274


I hereby certify that on May 29, 2020, the
foregoing was filed electronically through the
CM/ECF system, which caused counsel for the
Defendant to be served by electronic means, as
more fully reflected on the Notice of Electronic
Filing.

/s/_____
NICHOLAS MARSHALL
Assistant United States Attorney